[M'Faden *v.* Parker et al.]

## *William M'Faden *against* William Parker and Moore Wharton.

New trial granted where in a suit on a note by indorsee against indorsers the court submitted to the jury the intentions of the plaintiff in discharging the drawer out of custody on a *ca. sa.* issued against him.

ACTION by the indorsee, against the indorsers of a promissory note. The case was this :

On the 30th December 1796, George Eddy drew a promissory note for $1200, payable to Parker and Wharton, or their order, in 60 days, who indorsed the same to M'Faden. The note not being paid when it became due, the present suit was brought by the plaintiff, and also another against the drawer, to March term 1797, on which judgment was obtained according to the practice of the court in September term following. The present cause was put to issue in September term 1797, by the defendants' pleading *non assumpserunt* and payment, and after one term had intervened, was marked not to be brought forward.

A *testatum ca. sa.* issued on the judgment against the drawer to Northampton county, returnable to December term 1797, on which the sheriff returned " c. c. c. and the defendant discharged "from the execution by order of the plaintiff." The following note was written by the plaintiff to the sheriff.

" M'Faden *v.* Eddy. Sir, I request and desire that you dis- "charge the defendant on the above mentioned writ, he having " satisfied me of the debt, interest and costs. November 20th, " 1797.                                        WM. M'FADEN.

" To Henry Spering, sheriff of Northampton county."

Underneath was entered, " Plaintiff paid sheriff 45 dollars, "the costs."

On the same 20th November, Eddy gave his judgment bond to the plaintiff for the amount of the debt, interest and costs, payable in four months ; on which judgment was entered the following day in the county of Northampton ; but from the embarrassed state of Eddy's affairs there was no prospect of obtaining the money under the judgment.

The cause came before the court at different times, under various shapes.

On the 26th December 1801, a jury was sworn in it, when the contest was, whether as the receipt of the 20th November 1797, preceded December term, and it was not then pleaded *puis darrein continuance,* the same would be received in evidence. On the part of the plaintiff it was contended, that as the defence was grounded on strict law, the acceptance of an useless unproductive bond from the drawer, the same measure should be dealt out to his adversary ; and if he had foregone *his legal right by omitting to plead the same in due time, the court would not interpose in his behalf. The defendants insisted, that whatever took away the right of action, though

*497]

[M'Faden *v.* Parker et al.]

after plea pleaded, might be given in evidence on the general issue, if the party was not bound to plead it specially. Here the receipt not being under seal, could not be specially pleaded; and any thing might be given in evidence, which shewed that the plaintiff had no cause of action. 3 Burr. 1345. The uniform sentiments of the court and bar, and the liberality of practice, which had constantly prevailed in Pennsylvania, operated strongly on the resolutions in the English books; and it was presumed that none of the profession meant to introduce a new mode of practice.

The plaintiff's counsel frankly disclaimed any such intention; and it was then agreed, that a verdict should be given for the plaintiff for $1564\frac{80}{100}$, subject to the opinion of the court on this question, whether the discharge and receipt (before stated,) given by the plaintiff to George Eddy, could be given in evidence under the pleadings and issue in this case? It was admitted, that the defendants' counsel, as soon as he knew of the discharge of the drawer from execution, communicated it to the plaintiff's counsel, who once marked the cause, or ordered it to be marked, not to be brought forward; but whether this communication was before or after December term 1797, the defendants' counsel does not recollect; but the plaintiff's counsel affirms positively, that it was after December term 1797, and he revoked the order not to be brought forward, soon after it was made, and ordered the cause to be marked for trial. It was also admitted, that the plaintiff received no money upon giving the discharge and receipt as above stated to George Eddy, but took a bond and warrant of attorney from him, upon which judgment was entered up in Northampton county, and binds the lands which George Eddy has there, if any he has. And if the court shall be of opinion, that the discharge could not be given in evidence, it was agreed, that judgment should be entered for the plaintiff; but if otherwise, then the verdict to be taken off, and judgment entered for the defendants.

On the 28th December 1802, the question came on to be argued before the court, and after some process made therein, it was insinuated, that if the plaintiff recovered, it must be owing to the default of the adverse counsel, which had arisen from the acts of the plaintiff's counsel; whereupon the plaintiff's counsel readily agreed to postpone the argument, and to try the cause again on the following terms.

It was agreed, that the defendants should be permitted to en-*ter at this time, a plea *puis darrein continuance,* with like effect as if it had been entered at the day given for their [*498 next appearance after the new matter occurred. It was further agreed, that the plaintiff should be allowed to give evidence of all facts and circumstances, to shew that the new matter pleaded, ought not to operate as a discharge of the defendants; and that the defendants be allowed to give evidence of all facts and circumstances to repel such evidence on the part of the plaintiff,

and to shew that such matter ought to operate as a discharge of the defendants, and that the plaintiff has received actual value or security from the drawer. And that it be admitted, that notice in due form of law was given to the defendants by the plaintiff, of the non-payment of the note on which the suit is founded.

Under this agreement, the defendants on the 26th February 1803, entered the plea of payment *puis darrein continuance*, with leave to give the special matters in evidence, and relinquished all former pleas. The plaintiff replied *non solverunt* and issue.

On the 2d March 1803, at Nisi Prius before SHIPPEN, C. J. SMITH and BRACKENRIDGE, Justices, the cause came on again for a trial, when after a full discussion of the questions of law on both sides, the Chief Justice charged the jury to the following effect:

The indorser of a promissory note is equally liable with the drawer, and he is fixed after due notice, unless an actual satisfaction has been received. Whether there has been such satisfaction is the point to be tried.

The taking of the drawer in execution and discharging him by the indorsee, will in general exonerate the indorsers of a note, but not the mere acceptance of a bond from him. Here the defendants rely on the words of the discharge. The expressions are strong, and taken by themselves, independent of the other proof, would indicate that the debt, interest and costs were fully paid. The drawer might have convinced the indorsee, that he was perfectly safe, in relying upon him alone. If his goods or lands had been levied on to the amount of the debt, the indorsers would have been discharged clearly. So if the indorsee had done any act, whereby the indorsers would be led to believe naturally, that they were discharged, and had thereby been lulled into a fancied security. The true question rests on the party's intentions at the time. It is possible, that the plaintiff might have depended more on the solvency of Eddy, than of the defendants; but if the latter had not seen his discharge, they might possibly have taken effectual measures against the drawer. It is however contended here, that the indorsee only intended to discharge the drawer and not the indorsers. This is a matter of *fact to be decided by the jury, whether the plaintiff relied solely on the bond and judgment of Eddy. If they should be of opinion, that the discharge was confined to Eddy, then the plaintiff is entitled to recover; otherwise not. For the bond may be a satisfaction, if it was so intended, though no money was paid to the plaintiff.

The jury found a verdict for the plaintiff for $1651.

And now 22d March 1803, a new trial was moved for by the defendants' counsel, on the ground of the court's misdirection to the jury. They should have been told the operation of the law under all the facts and circumstances combined. The in-

[M'Faden *v.* Parker et al.]

tention of the indorsee, to discharge either drawer or indorsers, should not have been submitted to them to decide on.

Next to doing right, the great object in the administration of public justice, should be to give public satisfaction. 3 Bl. Com. 390. 2 Term Rep. 120. It is confidently believed, should the court be convinced on more minute reflection that they have erred, they will say so without hesitation.

The agreement under which the cause was tried, has been relied on by our adversaries. But it cannot be inferred from thence, that the intention of the parties was to be left to the jury, or that the rules of evidence were to be relaxed in the smallest particular. Neither side is precluded thereby from taking a bill of exceptions, or moving for a new trial. Let the intentions of the plaintiff be what they might, we are now concluded by the verdict on that head. But we are at liberty to contend, that his intentions cannot operate on the present question ; and if the drawer of the note was discharged by the act of the indorsee, under all the circumstances of the case, that it will avail the indorsers. They guaranteed payment *sub modo ;* but if the holder destroyed or even delayed their remedy against the drawer, they are discharged. They could not be supposed to surrender their legal rights by the agreement.

Where the defendant was taken on a *ca. sa.* and discharged by the plaintiff's consent, he is not liable to any new execution, nor to an action on the judgment. 4 Burr, 2482. If the plaintiff consent to discharge one of several defendants taken on a joint *ca. sa.* he cannot afterwards retake him, or any of the others. 6 T. R. 525. Where a party is taken on a *ca. sa.* it is the same thing as if he had paid the money. 3 Wils. 14. It is a satisfaction in law. Ambl. 79. 7 T. R. 421. Here it is admitted, that Eddy was discharged ; but it is objected, that this does not discharge the defendants. We agree, that merely taking him in execution does not discharge them, and that while the plaintiff remained passive, it was no payment, either as to him or third *persons. But an executor discharging one in execution, shall be accounted in law assets, as money received. Hob. 59. [*500

Acceptance of a less sum in satisfaction is a discharge of the previous debt. 1 Stra. 691. So of a bond. Noy. 140. And where an indorsee accepts of a bond from the drawer of a bill of exchange, it will be a bar to any action which may be brought against the indorsers. 3 Mod. 87. It is not insinuated, that the bond taken will extinguish the judgment in this court against the drawer, but that his release from the custody of the sheriff and terms of plaintiff's note to the sheriff, operate as a complete satisfaction ; and cases shew, what cannot be denied, that the acts of the holder may exonerate the indorser. 1 Dall. 254–5. Though nothing but an express declaration by the holder of a bill will discharge the acceptor, it is otherwise as to the indorsers. Doug. 249. (2d edit.) And it will be observed, that

[M'Faden *v.* Parker et al.]

in Ellis *v.* Gallindo, Ib. 250, the question of intention arising out of the circumstances, which the court on the motion for a new trial thought should have been left to the jury, was in the case of an acceptor and not of an indorser.

The indorsee of a promissory note, seeing the hand writing of the indorser, need not examine that of the drawer. He sometimes looks to the credit of each. All are presumed to know the law and to trust to it. The indorser is not even a surety until fixed by notice, and then is a more favoured surety. He is bound contingently, but a surety is bound in the first stage of the transaction. Where an obligee in a bond with a surety, without communication with the surety, took notes from the principal, and gave further time, the surety was discharged. 2 Ves. jr. 540. 2 Bro. Cha. Ca. 579. Upon a joint and several bond, each obligor is a principal at law ; but equity makes a wide difference, as justice requires, between principals and sureties. Where any act has been done by the obligee, that may injure the surety, the court is very glad to lay hold of it, in favour of the surety. 4 Ves. jr. 833. The indorser of a bill is fixed by notice, and Lord Chief Justice EYRE argues on it. Giving a new credit to the acceptor before noting and protesting for non-payment, will discharge the acceptor. 1 Bos. and Pull. 655. The holder is not bound to sue the acceptor after protest for non-payment and notice to the drawer, and may forbear to sue him, after his right to sue the drawer has attached. Ibid. So here. The plaintiff was under no necessity of suing Eddy, but might have sued the defendants alone. He has, however, proceeded to judgment and execution against the former, and has discharged the latter by entering into a new engagement with him, and giving him a new credit of four months, without their

*501]    *consent or participation. Doing of this after judgment can make no difference. The judgment was annihilated by taking Eddy's body in execution and his subsequent enlargement.

The authority of Hayling *v.* Mulhall, 2 Bl. Rep. 1235, was much relied on at the trial by the plaintiff's counsel. It is there held, (*vide* 2 Bos. and Pull. 62,) that a bill holder may sue a subsequent indorser, notwithstanding he has ineffectually taken in execution the body of a prior indorser and afterwards set him at liberty on a letter of licence ; and according to Blackstone, J. taking the body in execution by a *ca. sa.* only operates as a discharge to the identical person so imprisoned. Lord MANSFIELD, speaking of these reports, says they are not very accurate. We must not always rely on the words of reports, though under great names. Doug. 93. (2d edit. note.) Besides, the principles of the case are contradicted in 2 Ves. jr. 540. There the party was discharged on a letter of licence, so that the debt continued. Here the plaintiff acknowledged that he was satisfied the debt, interest and costs, and the judgment was thereby extinguished. We are not left at liberty to consider

[M'Faden *v.* Parker et al.]

whether the thing given and received in satisfaction, turned out not to be so good as it was then calculated upon by both parties.

Since the trial we have been fortunate enough to discover two cases, the principles whereof apply directly to the questions before the court. The first is *ex parte* Smith, in the matter of Lewis and Potter, 3 Bro. Cha. Ca. 1. There the indorser of a bill of exchange became bankrupt, and the holder proved the amount of his bill under his commission, and afterwards compounded it and discharged the acceptor without notice to the assignees of the indorser; and he was held thereby to discharge also the indorser's estate, and the proof of his debt was expunged. Lord Chancellor THURLOW says, that the doctrine of notice, which holds among solvent persons, does not apply as between bankrupt estates, and argues on the ground of the indorser being fixed. If notice was necessary, and not given, the indorser would certainly be discharged. He was well satisfied that the creditor had made the best terms he could with the drawer of the note, and that the justice of the particular case was with him; but he thought in point of precedent it might be dangerous to say, that after such an acquittal, the holder may resort to the indorser's estate. Though the holder did the best he could against the drawer, this shall not avail him as against the indorser. He shall not favour the former at the expence of the latter.

The next case is English *v.* Darley, 2 Bos. and Pull. 61. There the indorsee of a bill prosecuted the acceptor to judgment and execution, and having received part took his bond for the *remainder, excepting only a nominal sum, payable [*502 by instalments, and he was held to be precluded from proceeding against the indorser. The plaintiff's counsel insisted that each of the parties to the bill were as co-sureties, and that nothing short of actual payment by one of them should be considered as a satisfaction in an action against any of the others, and relied on the cases in 2 Bl. Rep. 1235 and 4 Term Rep. 825, cited on the present trial. But Lord Chief Justice ELDON delivered the opinion of the court, that as long as the holder is passive, all his remedies remain; and if any of the parties be discharged by the act of law, that operation of law shall not prejudice the holder. If he sues a prior indorser first and discharges him from execution, it will afford a sufficient objection to an action against a subsequent indorser, and the liability of the indorser is varied by the act of the holder.

It is apprehended that these resolutions meet precisely the case before the court. The maxim, *sic utere suo, ut alienum non lædas*, is strictly applicable to the legal question. But the plaintiff's doctrine prostrates the remedy of an indorser against the drawer of a note and prior indorsers. The court are called on to settle a great mercantile point. It is presumed this will not be done, upon what is called justice in the abstract, but that the court will pursue that equity which is interwoven with our

system of judicial polity, and depends on principle .as well as precedent.

The arguments of the plaintiff's counsel were in substance as follow:

It has been said with much reason, that we rely on the true spirit of the agreement of counsel, under which this suit was tried. The circumstances which gave rise to it must not be forgotten. It cannot have escaped the recollection of the court, that in the two first instances, wherein the parties presented themselves before them, the plaintiff's counsel insisted, that the discharge on the *ca. sa.* and their client's directions to the sheriff of Northampton county, could not be received in evidence, not having been pleaded since the last continuance. When by our agreement of the 28th December 1802, we disarmed ourselves of our matter of law, we naturally must have expected reciprocity. Our object was to guard against the conclusiveness of the written papers, and yet our adversaries now insist on it. What do we get in return for our concession, unless the intention of the plaintiff was fairly to be submitted to the jury ? On this ground the trial proceeded, and the counsel on each side cited Dingwall *v.* Dunster, Doug. 247, 2d ed., *503]     \*and Ellis *v.* Gallindo, ib. 250 (note) and applied them as it best suited their purposes. We contended, that it was a question of intention arising out of the circumstances, and that what was done against the drawer did not necessarily discharge the indorsers. The Chief Justice expressed the same ideas of the agreement in his charge to the jury.

The law of merchants is founded on plain sound reason, disentangled from legal jargon. It is a general rule, that all the parties to a note or bill are liable to the holder till actual payment, but like other general rules it is subject to exceptions. It lies on the defendants to repel the demand of the plaintiff.

We conceded on the trial, that if the plaintiff had been guilty of any laches before notice, or had given further time to the drawer, the indorsers would be discharged ; that the discharge of one of two or more joint debtors is a discharge of all ; and that a discharge on a *ca. sa.* by a plaintiff puts an end to all remedy against the person of the same defendant. On joint and several obligations, if there is a joint suit, the plaintiff cannot have several executions; but it is otherwise if they are sued severally. Hob. 59, 60, 61.

When this note became due, the indorsers became absolutely responsible for the money, on receiving notice that the drawer had not paid it. They then ceased to be conditional sureties, and were bound to take it up. When it was indorsed it resembled a bill of exchange, the drawer representing the acceptor in the latter case. Kyd on Bills 22. And nothing will discharge the indorser but the absolute payment of the money. Ib. 72. The indorsee does not trust to the credit of the drawer of a bill.

[M'Faden v. Parker et al.]

Ib. 110.  The plaintiff therefore having confided in the solvency of the defendants, when he paid his money, may well look to them, if even the hand writing of the drawer was forged.  Here the notice of non-payment of the note is admitted to have been duly given to the defendants.  If the indorsee gives credit to the drawer without notice to the indorser, it will discharge him. Bull. 275.  But though forbearance before protest and notice is a discharge, yet after such notice no laches can be imputed to the drawer.  1 Bos. and Pull. 655, already cited.  Notwithstanding what the Chief Justice is made to say, in 3 Mod. 87, respecting the indorsee of a bill of exchange accepting a bond from the drawer, and thereby barring his remedy against the indorsers, it appears by a report of the same case, in 2 Show. 494, 503, that the Chief Justice was absent.  At the most, if the opinion was delivered, it was extra-judicial, and little weight can be attached to it.  1 Burr. 8.  3 Burr. 1730.  4 Burr. 2068.

*The indorser of a note is not discharged without actual payment, until there is some neglect or default in the [*504 indorsee.  1 Wils. 47.  The plaintiff has been guilty of neither. If he had not proceeded to execution against the drawer, he would have been censured for endeavouring to throw the whole burthen on the indorsers.  And now our best efforts in their favour are made a ground of defence.  In taking the bond the plaintiff must be considered as agent for those liable to pay.

The case in 3 Wils. 13, 14, is well explained in Tidd. 768, Lond. ed., 412, Dublin ed. : a ca. sa. is quoad the defendant considered in law a satisfaction of the debt, but is no satisfaction, so as to bar the plaintiff from taking out execution against other persons, liable to the same debt or damages.  Hob. 59.  It will not be pretended, that the bond or the judgment entered under it, could be pleaded in bar of the former judgment.  1 Dall. 423.

In the late discovered authorities, the case ex parte Smith, depended on the indorsees accepting the proposition of the drawer of the note to pay 15s. in the pound to all his creditors, receiving the same, and giving a full discharge to the drawer for the amount of his note, without the consent or privity of the assignees of the indorsers who were bankrupts.  The Lord Chancellor thought that such a proceeding would be open to fraud by favouring an acceptor at the expence of an indorser by an improper composition.  And in English v. Darley the indorsee of the bill after proceeding to execution against the acceptor, though he had sufficient to answer the same, received a part of his demand and took security for the remainder, which was an act highly injurious to the indorser.  Those authorities therefore are clearly distinguishable from the case now under consideration.  It is true, in the latter case, Lord ELDON censures the marginal abstract of Hayling v. Mulhall, in 2 Bl. Rep. 1235, as incorrect, but finds no fault with the report itself.  It therefore stands uncontradicted, notwithstanding the suggestions of the defendants' counsel, and moreover has been transcribed

and adopted by Kyd, Bayley, Lovelass, and the editors of the Supplement to Bacon's Abridgment.   In 4 Term Rep. 825, Ld. KENYON says, that taking the body of an acceptor of a bill in execution, is no satisfaction of the debt as between others, than the holder ; and that it was a mere formal satisfaction even to the holder, not like actual payment.

The equity of this case has been fully accomplished by the verdict ; the defendants have received the plaintiff's money and were bound to pay the note on receiving notice of the drawer's default.   The court will not grant a new trial on the ground of *misdirection in point of law, if they see that justice has *505] been done between the parties. 2 Term Rep. 4.   Every thing will be presumed in favour of the verdict, and if it be consistent with the justice, conscience and equity of the case, they will not set it aside. 4 Term Rep. 648.

SHIPPEN, C. J. delivered the opinion of the court.   The argument has been conducted with great ability, and the matters of law have been much better considered than at the trial.   We deem it no dishonour to say, that independent of the argument, we now think, that the intentions of the plaintiff should not have been submitted to the jury, whether at the time of the discharge of Eddy he relied on the defendants.   We are not however satisfied about the true construction of the agreement ; and as it has made different impressions on the minds of honourable counsel, we decline giving any opinion on it for the present, and think the same should be more fully considered.   In the meanwhile, we award a new trial without costs.

Messrs. Ingersoll and Dallas, *pro quer.*

Messrs. E. Tilghman and Hallowel, *pro def.*